FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 1 8 2004

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARIA CHAVEZ, *et al.*, on behalf
of themselves and all others
similarly situated,

    Plaintiffs,

      v.

IBP, INC., LASSO ACQUISITION
CORPORATION, and TYSON
FOODS, INC., all Delaware
corporations,

    Defendants.

NO. CT-01-5093-RHW

**ORDER DENYING IN PART
AND GRANTING IN PART
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT**

Before the Court are Defendants' Motion for Partial Summary Judgment (Ct. Rec. 469), Plaintiffs' Motion to Strike Portions of Declarations (Ct. Rec. 490) and Plaintiff's Motion to Shorten Time for Hearing on Motion to Strike is (Ct. Rec. 492). For the reasons below, Defendants' Motion for Partial Summary Judgment is denied in part and granted in part.

**Background**

This is a class action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the Washington state Minimum Wage Act ("MWA"), RCW chapter 49.46, the Industrial Welfare Act, RCW chapter 49.12, and the Wages-Deductions-Contribution-Rebate Act, RCW chapter 49.52.

The named Plaintiffs Maria Chavez, Ranulfo Gutierrez, Paz Arroyo, Antonio Martinez, and Silverio Diaz are employees at the IBP/Tyson Foods

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 1**

1   slaughterhouse in Pasco, Washington (the "Pasco plant"). The unnamed Plaintiffs

2   are current and former employees at the same processing facility who have either

3   opted into the FLSA class and/or been certified as part of the Rule 23 class. The

4   exact number of class members is disputed by the parties.

5        The present action is a later counterpart to the case of *Alvarez v. IBP, Inc.*,

6   No. CT-98-5005-RHW (E.D. Wash.) ("*Alvarez*"), which also involved employees

7   at the Pasco meat-processing plant. *Alvarez* was affirmed in part by the Ninth

8   Circuit in *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003). A petition for

9   certiorari is currently pending. *Alvarez v. IBP, Inc.*, No. 03-1238, 2004 WL

10  424055 (Feb. 26, 2004) (decision pending). The parties have entered a stipulation

11  agreeing to be bound, with few exceptions, to this Court's findings of fact and

12  conclusions of law in *Alvarez*. (Ct. Rec. 451, "Stipulation").

13  **I.    Defendants' Motion for Partial Summary Judgment**

14       Defendants move for partial summary judgment on five separate grounds,

15  described as follows (Ct. Rec. 469). First, Defendants assert that IBP's Pasco

16  plant policy changes, purportedly prompted by this Court's decision in *Alvarez*,

17  necessarily defeat Plaintiffs' claims related to donning and doffing protective gear

18  for meal and restroom breaks and time spent walking from equipment storage

19  lockers. Second, Defendants seek a finding that Plaintiffs' expert's revised time

20  estimates for donning and doffing and walking time claims are estopped by the

21  Court's findings in *Alvarez*. Third, Plaintiffs seek summary judgment that waiting

22  time between double shifts is not compensable. Fourth, Defendants allege that

23  meeting time has been adequately compensated. Finally, the Defendants move the

24  Court to find that they have an affirmative defense as a matter of law based on

25  their good faith reliance on the United States Department of Labor's ("DOL") June

26  6, 2003 opinion letter declaring that pre- and post-shift donning and doffing of

27  protective clothing is noncompensable under § 3(o) of the FLSA.

28

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 2**

1    **A.    Standard of Review**

2          Summary judgment is appropriate if the "pleadings, depositions, answers to

3    interrogatories, and admissions on file, together with the affidavits, if any, show

4    that there is no genuine issue as to any material fact and that the moving party is

5    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see General Mills,*

6    *Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980 (Fed. Cir. 1997).  When considering

7    a motion for summary judgment, a court may neither weigh the evidence nor

8    assess credibility; instead, "the evidence of the non-movant is to be believed, and

9    all justifiable inferences are to be drawn in his favor." *Id.*  In rendering a decision,

10   the Court must view the evidence presented by the parties "through the prism of

11   the substantive evidentiary burden" they would bear at trial. *Anderson v. Liberty*

12   *Lobby, Inc.*, 477 U.S. 242, 255 (1986).

13   **B.    Summary Judgment on Plaintiffs' Meal Period Donning and Doffing**

14   **      Claim From October 16, 2001 through September 15, 2003**

15         Defendants move for summary judgment on the Plaintiffs' First and Second

16   Claims in as far as they allege violations of state and federal law for failure to pay

17   for meal breaks after IBP enacted certain policy changes.  Defendants argue that

18   Plaintiffs' meal break pay allegations have been mooted by IBP's post-*Alvarez*

19   policy changes, which include: (1) allowing employees to use the restroom during

20   production; (2) allowing employees to utilize the cafeteria without removing outer

21   garments; and (3) allowing employees to remove heavily soiled garments prior to

22   the meal break, on paid time.

23         Defendants argue that these changes release them from any liability for the

24   time employees spent donning and doffing protective gear during the meal period

25   from October 16, 2001 through September 15, 2003.  Defendants state that time

26   after October 16, 2001 is not compensable, because that is when the new IBP

27   restroom policy was posted.  The *Chavez* Plaintiffs concede they lose their meal

28   break doffing and donning claim when IBP started paying for 5 minutes of meal

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT * 3**

1  break time on September 15, 2003, but assert that the claim is still valid prior to

2  that date (PSOF 4).

3      In *Alvarez*, this Court found that because "IBP strongly encourages

4  employees to use the restroom during the unpaid meal period and permits such use

5  during work periods only on an emergency basis," "requires employees to remove

6  most equipment prior to entering the restroom," and requires employees to be at

7  their work stations at the end of breaks, removing equipment at the meal period to

8  use the restroom is compensable. *See Alvarez* Findings at 7. The Ninth Circuit

9  held that donning and doffing equipment was work and, under state law, any work

10  during a 30-minute meal break required compensation for the entire 30-minute

11  meal break. *Alvarez v. IBP*, 339 F.3d 894, 913-14 (9th Cir. 2003).

12  **i.      Facts Related to Meal Break Donning and Doffing Claim**

13      Beginning June 28, 2001, Defendants allowed workers into the cafeteria

14  with frocks and gloves, unless they were heavily soiled (DSOF 13). Employees

15  were still required to remove heavily soiled frocks and gloves before the

16  beginning of the meal period on paid time (DSOF 13; Stipulation at ¶54). On July

17  1, 2001, IBP increased the length of the uncompensated meal period from 30 to 35

18  minutes (DSOF 9; PSOF 2; Stipulation at ¶¶ 63-64). Relatively few workers wore

19  mesh aprons, sleeves, frocks and other equipment in the cafeteria (PSOF 7; DSOF

20  14). Employees continue to don and doff during the meal break; class members

21  who have been deposed to date have testified that they donned and doffed

22  regularly at the meal break (PSOF 16; DSOF 20). Employees with soiled frocks

23  continue to obtain fresh frocks during their unpaid meal break time (PSOF 6;

24  DSOF 13).

25      Class members doff their equipment during the meal break because it is

26  dirty, cumbersome and heavy (DSOF 22; *see i.e.* Ct. Rec. 496, Ex. 5, Castaneda,

27  Dep. 14: 13-15; Ct. Rec. 496, Ex. 6, Castillo Dep. 15: 16-22; 16: 1; Ct. Rec. 496,

28

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 4**

1  Ex. 15, Herrera Dep. 19: 10-22, 20:1-15, 21: 18-22, 19:20-21; Ct. Rec. 496, Ex. 18

2  Lemus Dep. 17: 6-12).

3      IBP requires that employees remove all of their equipment except for their

4  hard hat before they may use the restroom.  On October 16, 2001, Tyson Fresh

5  Meats, Inc. posted its "Team Member Bill of Rights," which addresses issues of

6  restroom use during production time by stating that "IBP agrees to provide to IBP

7  team members . . . [r]easonable time for necessary restroom breaks during shift

8  production time" (PSOF 13; DSOF 18; Ct. Rec. 451, *Stipulation* ¶ 56).  A posted

9  memo regarding Defendants' written Restroom Facilities policy on restroom use

10  also provides that:

11     3.   Employees are expected to use restroom facilities prior to shift, at breaks and meal periods, and at the end of shift.  This minimizes

12  disruption of production during the shift due to employees' absence from the line and avoids the undue burden such temporary absence

13  might place on co-workers.

14     4.   <u>No one</u> will be denied access to the restrooms during production time. Each area supervisor is responsible for releasing an employee from

15  the line for restroom use, upon the employee's reasonable request, in accordance with that line's arrangement for coverage for an

16  employee's temporary absence.  Each area supervisor is responsible for planning such coverage, with the understanding that it may take

17  several minutes to provide such coverage.

18     5.   While it is the Company's policy to honor requests for restroom use during production time, abuse of such temporary absence from the

19  line is prohibited . . . . Abuse may also include excessive requests, particularly at the same time each day, unless prescribed by a

20  physician.  Violators will be subject to corrective discipline.

21

22  (PSOF 11; Mark Decl., Ex. Q, McGaugh Decl., Ex. 5 at 1) (Defendants refer to

23  this memo as "co-existing" with the Bill of Rights).  Ken Kimbro, Senior Vice

24  President of Human Resources for Tyson Foods testified that, despite the Bill of

25  Rights, " . . . there's a general expectation that you would use the bathroom before

26  you start work, during your breaks, and at the end of your work shift" (PSOF 11;

27  Kimbro Dep. 41:25-42:25).  Mr. Kimbro stated that this policy recognized that "if

28  people utilize the restroom facilities before and after and at break times, it is less

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT * 5**

1  disruptive to the production and doesn't put a burden on co-workers if they are

2  relieved or have to spell them out during their work period." *Id.* The Defendants

3  assert that many workers are abusing the shift restroom policy; Plaintiffs dispute

4  this claim and cite it as evidence of IBP's reluctance to allow restroom use, and

5  proclivity to punish workers who choose do so (PSOF 17; DSOF 20).

6      Plaintiffs present depositions in which employees state that they often need

7  to wait to use the restroom after they have informed their supervisors they need to

8  use it, and supervisors sometimes question whether a class member really needs to

9  use the restroom when they request relief (PSOF 13; DSOF 18; *see i.e.* Ct. Rec.

10  544, Ex. 10, Barahona Dep. 15:18-22; Ct. Rec. 496, Ex. 14, Guiterrez Dep. 80:18-

11  25, 81: 1-23, 83: 1-2; Ct. Rec. 496, Ex. 18, Lemus Dep. 14:16-21). Employees

12  also stated that sometimes their supervisors would fail to heed their requests to go

13  to the bathroom altogether. (*See i.e.* Ct. Rec. 544, Ex. 20, Monroy Dep. 14: 15-2-

14  22; Ct. Rec. 496, Ex. 15, Herrera Dep. 16: 10-15). Despite these restrictions, a

15  significant number of workers currently use the bathroom during production time

16  (PSOF 15; DSOF 19).[1] The exact number is disputed.

17      On September 15, 2003, under the compulsion of a labor arbitration award

18  and orders entered by Judge Robert Lasnik of the Western District of Washington,

19  IBP began paying all employees for five minutes of their 35-minute meal break

20  (PSOF 4; DSOF 11). The parties stipulate that there is no liability under either

21  federal or state law for activities performed by employees during the meal period

22  after September 15, 2003 (Stipulation ¶ 65).

23

24

---

25      [1] While Dr. Mericle's study, presented by Defendants, suggests that more

26  employees used a particular restroom during production time than during the meal

27  period, Dr. Mericle's data only involved one set of restrooms, and therefore was

28  incomplete. (PSOF 17-18; DSOF 21).

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT * 6**

**ii.    Discussion of Meal Break Donning and Doffing Claim**

IBP asserts that its mealtime equipment and restroom usage policy changes have fundamentally undermined Plaintiffs' meal break compensation claims.  IBP asserts that because Defendants may now choose to request permission from their supervisors to use the restroom during production time (unless their use constitutes abuse), and may wear frocks and gloves that are not "heavily" soiled into the cafeteria, their time is fully their own.  IBP argues that all that their Restroom Facilities policy's suggestion that employees use the restroom before and after work and on breaks is nothing more than a suggestion.

Under federal regulations, employers providing unpaid meal breaks must "completely reliev[e]" employees "from duty for the purposes of eating regular meals" for a period of 30 minutes or more.  29 C.F.R. § 785.19.  By definition, an "employee is not relieved if he is required to perform any duties, whether active or inactive."  *Id.*; *see also Brennan v. Elmer's Disposal Serv., Inc.*, 510 F.2d 84, 88 (9th Cir. 1975).  In *Alvarez*, the Court found that because employees were required to doff equipment in order to enter the cafeteria or restroom, and because employees were required to use the restroom during break times, the donning and doffing of protective gear to use the restroom constituted work.  *Alvarez* Findings at 26-27.

While the parties do not dispute that IBP does not require employees to doff equipment to enter the cafeteria, Plaintiffs present evidence that workers are unable to obtain the full benefit of resting when wearing heavy metal equipment.  Plaintiffs argue that this impingement upon workers' break time is significant because, while wearing equipment, workers are not completely relieved from the pressures of duty, and, are engaged in "inactive duty" for the benefit of their employer.  The weight and heft of workers' equipment varies greatly depending on their job duties (See Stipulation ¶ 50).  Since the Court has not been briefed on the size and weight of various equipment sets, the Court is unable to conclude, as a

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 7**

1  matter of law, that the wearing of required equipment sets is legally insignificant.

2  Instead, the evidence, when viewed in the light most favorable to Plaintiffs,

3  suggests that in order to obtain complete relief from duty, some employees must

4  expend their break time removing gear in lieu of eating and resting and this time

5  may be compensable.

6      Plaintiffs also assert that the IBP policy changes have done little to

7  substantively impact meal break doffing and donning, and the *Alvarez* level of

8  meal break clothes and equipment changing has continued unabated throughout

9  the October 16, 2001 to September 15, 2003 period for which Defendants seek

10  summary judgment.  Plaintiffs contend that under the new policy IBP obligates

11  employees to don and doff and use the restroom, if at all possible, during unpaid

12  meal breaks, and that those activities are therefore compensable.

13      An employee's compensable duties include any work that employers

14  "permit."  29 C.F.R. § 785.11 provides that "[w]ork not requested but suffered or

15  permitted is work time" and where the "employer knows or has reason to believe

16  that [the employee] is continuing to work," the "time is working time."  Similarly,

17  RCW 49.46.010(3) provides that the definition of "employ . . . includes" instances

18  where an employee is "permit[ted] to work."  Courts have determined that donning

19  and doffing equipment and gear is  work under certain circumstances.  *Alvarez v.*

20  *IBP*, 339 F.3d 902 (9th Cir. 2003).  While donning and doffing "optional items that

21  are worn by the employees at their own discretion" is not compensable, *see*

22  *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 561 (E.D. Tex. 2001),

23  this Court in *Alvarez* found that all of the equipment for which Plaintiffs seek

24  donning and doffing compensation is either part of IBP's minimum required

25  equipment sets or necessary and indispensable to the job.  *Alvarez* Order on

26  Objections at 7-11.

27      While it is undisputed that IBP "expects" workers to use the restroom

28  during the meal break and before and after production, the Court is unable to

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 8**

1    determine, as a matter of law, that this expectation is nothing more than a

2    suggestion. IBP points to the unpublished decision of *Tum v. Barber Foods, Inc.*,

3    NO. 00-371-P-C, 2002 WL 89399 (D.Me. Jan 23, 2002), as support for their

4    position that a mere suggestion by management that employees use the bathroom

5    during break time is not the equivalent of forcing them to use the restroom during

6    unpaid break time. However, in the case at hand, the Court finds that there is a

7    genuine issue of material fact as to whether the IBP policy, in practice, amounts to

8    an obligation to use the restroom on breaks, rather than during production time.

9    **C.    Summary Judgment on Plaintiffs' Pre- and Post-Shift Locker Usage**

10       In *Alvarez*, the Court found that the first principal activity of the day

11    involved retrieving equipment from the locker room and donning that equipment,

12    and the final activity involved returning to the locker room and doffing and/or

13    cleaning equipment. *Alvarez* Findings at 18-19. The Court explained that

14       Protective equipment is integral and indispensable to the work of employees
         required to wear such equipment. Employees who wear protective
15       equipment begin their day upon donning their first piece of compensable
         protective equipment. This equipment is stored in the employee locker, as
16       per IBP policy.

17    *Alverez*, Findings at 19. Because employees were required to begin their days at

18    their lockers, the Court found that walking time from the locker to the production

19    line was compensable. *Id.* The Ninth Circuit affirmed this Court's decision,

20    holding that donning equipment in locker rooms was a "preliminary activity" that

21    was both "'integral and indispensable' to the work" performed and required by

22    IBP's rules. 339 F.3d at 906.

23       The Defendants allege that on June 28, 2001 IBP informed employees that

24    they were no longer required to keep their equipment in their lockers, employees

25    are not entitled to compensation for time spent walking between the locker and the

26    workstation from June 28, 2001 to December 31, 2003.

27    **i.    Facts Related to New Locker Policy**

28       On June 28, 2001, IBP informed employees that they were no longer

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 9**

1  required to keep their equipment in their locker (DSOF 24). Eighteen of twenty-

2  two class members indicated that they know they may take their equipment home

3  with them if they desire (DSOF 26). Workers do occasionally take mesh or rubber

4  aprons home to clean them more thoroughly, but employees still store the better

5  part of their equipment in the locker (DSOF 26; PSOF 25-26). Employees stated

6  that they have not stopped using the locker room for donning and doffing (PSOF

7  26). A DVD provided by Plaintiffs shows some employees donning equipment at

8  the locker rooms and heading to the production lines (Ct. Rec. 495, Ex. 1).

9       Plaintiffs present evidence that no worker takes all of his or her equipment

10  home all of the time, because to do so would be impractical and unsanitary (PSOF

11  25-27; *see i.e.* Ct. Rec. 496, Ex. 9, Diaz Dep. 15: 12-14; Ct. Rec. 496, Ex. 6,

12  Castillo Dep. 17: 2-7). Plaintiffs also present evidence that workers are also

13  concerned that transporting equipment to their residences from the plant is

14  unhygienic. (*See i.e.* Ct. Rec. 496, Ex. 13, Gualjara Dep. 15: 13-17; Ct. Rec. 496,

15  Ex. 5, Castaneda Dep. 15: 10-12).

16       Plaintiffs present the deposition testimony of defense expert Ronald J.

17  Prucha, a retired acting administrator of the Food Safety and Inspection Service,

18  who stated that transporting equipment to and from home on a regular basis would

19  be "unsanitary" and he could not "visualize a plant that would allow such a thing."

20  (PSOF 27, Ct. Rec. 475, Ex. 1, Prucha Dep. 61:4-10). Prucha explained that

21  taking equipment out of a plant was a sanitation problem because the plant would

22  not "know where it's been" (*Id.* 62: 6-11). Prucha later stated that nothing in the

23  federal regulations explicitly prohibits an employer form allowing employees to

24  take their mesh equipment home. (*Id.* at 73:5-12).

25  **ii.    Discussion of New Locker Policy Claim**

26       The Defendants allege that because on June 28, 2001 IBP informed

27  employees that they are no longer required to keep their equipment in their

28  lockers, donning and doffing by employees at their lockers is no longer an

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT * 10**

"integral and indispensable" activity as defined by 29 C.F.R. § 790.8(c), or required by the government, and therefore is not compensable.  Plaintiffs opine that storing equipment in the locker room remains the only reasonable, practical and sanitary choice for workers, and, therefore, workers continue to perform their first and last principle activities in the locker room.

29 C.F.R. § 790.8(c) provides that

> If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes *on the employer's premises* at the beginning and end of the workday would be an integral part of the employee's principal activity.

(emphasis added).  The regulations go on to provide that "[s]uch a situation may exist where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work." *Id.* n.65.

The facts, when viewed in the light most favorable to Plaintiffs, reveal a genuine question as to whether employees are in fact required to don and doff at the Pasco plant.  Even if such donning and doffing is not required to occur by IBP at the Pasco locker room, there is still a material question as to whether equipment is required to be donned and doffed at the plant by law or by the nature of the work.  29 C.F.R. § 790.8(c) n. 65.

Plaintiffs argue that employees' storage of their equipment in a company locker is mandated by United States Department of Agriculture ("USDA") sanitation regulations.  When dealing with the locker donning and doffing issue in *Alvarez*, the Ninth Circuit held that IBP required locker room donning and doffing by company rule.  While it is undisputed that no such rule currently exists, the Ninth Circuit's conclusion was not solely based upon IBP's locker room policy.  Instead, the court pointed out that:

> the United States Department of Agriculture sanitation standards and Occupational Safety and Health Administration . . . industry standards bolster this 'by rule' conclusion, demanding maintenance of sanitary conditions, 9 C.F.R. § 308.3, and the provision of protective equipment at

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT * 11**

1    the Pasco plant "wherever [ ] [ ] necessary by reason of hazards or processes

2    of [work] environment." 29 C.F.R. § 1910.132(a)(1999).

3    *Alvarez*, 339 F.3d 894 at 903.

4        Here, IBP appears to have concluded that it is able to maintain sanitary

5    conditions without requiring, as a matter of company policy, that workers store

6    their equipment in on-site lockers. In Plaintiffs' post-summary judgment hearing

7    memorandum, however, they argue that irregardless of IBP policy, sanitation rules

8    require employees to store their equipment sets on-site. Plaintiffs propose that

9    USDA's Food Safety and Inspection Service's sanitation standards impose a duty

10   upon employees to maintain sanitary conditions while on duty. Specifically,

11   Plaintiffs rely on 9 C.F.R. § 416.5, entitled "Employee hygiene," which provides:

12

13       (a) Cleanliness. All persons working in contact with product, food-contact
     surfaces, and product-packaging materials must adhere to hygienic practices
     while on duty to prevent adulteration of product and the creation of

14   insanitary conditions.

15   Accordingly, the Court finds that there is a genuine issue of material fact as to

16   whether the changing of clothes on the employer's premises is required by USDA

17   sanitation standards.

18       Plaintiffs also argue that changing at lockers is mandated by the nature of

19   the work because, in some cases, the indispensable equipment worn by workers is

20   too heavy or wet to be transported reasonably to and from their personal

21   residences. The equipment sets utilized by employees vary greatly in size and

22   weight depending upon their role at the Pasco plant. On the present record, the

23   Court cannot determine as a matter of law that all of the equipment sets are of such

24   a size and weight that they may be transported, reasonably, on a daily basis, by the

25   employees to and from their residences. For these reasons, summary judgment is

26   inappropriate.

27   **D.    Summary Judgment re: Dr. Mericle's Supplemental Report**

28       In *Alvarez* plaintiffs sought recovery of roughly 40 to 50 minutes of pre-

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 12**

1  shift work, relying on witness testimony and time card data. While this Court

2  declined to award generalized damages, the Court utilized the elemental time

3  calculations in Dr. Kenneth S. Mericle's study to calculate damages. *Alvarez*

4  *Findings* at 21-11. To arrive at these time elements, Dr. Mericle videotaped

5  employees at the Pasco facility and recorded the time in which they performed

6  specific activities. *Id.* Dr. Mericle then averaged the times for each activity,

7  creating "elemental" times.

8      Dr. Mericle now presents a supplemental report on pre-shift work.

9  Defendants assert that Plaintiffs are estopped from raising the new multipliers and

10  time estimates contained in Dr. Mericle's supplemental report by their stipulation

11  with Plaintiffs and by their representations in *Alvarez*. Plaintiffs dispute this

12  contention.

13  **i.    Facts relevant to Dr. Mericle's Study**

14      The crux of this motion involves the scope of the stipulation among the

15  parties. The following paragraphs are relevant to this question:

16  75.  The plaintiffs and defendants stipulate that the following donning and
     doffing times from the *Alvarez* litigation will apply in the present case:

17

    (Table of specific equipment's donning and doffing time follows)

18
    ***

19  83.  These stipulations do not compromise plaintiffs' position that, starting April
     1, 2001, additional time needs to be added to the pre-shift equipment and

20       activity work segments in order to more accurately compensate production
     workers for their unpaid work based on the November 2002 report of Dr.

21       Kenneth Mericle. Defendants intend to oppose this argument on the basis
     of estoppel and the merits.

22  84.  Plaintiffs expect Dr. Mericle to testify that adding up donning, doffing, and
     activity work segments does not fully compensate class members. Dr.

23       Mericle will testify that class members perform a variety of work tasks not
     included in the *Alvarez* work segments, see report page 6 and n. 4 (e.g.,

24       unlocking and locking locker , obtain sand paper, obtain knives, steel
     knives, hand stretching exercises, taping fingers and miscellaneous work-

25       station preparation). Dr. Mericle will also testify that work segments are not
     performed seamlessly from one segment to the next, so that actual time to

26       complete the elements is greater than the sum of the elements.

    85.  Plaintiffs agree that any multiplier claim will accept the work segments

27       agreed to herein and will not include additional time for those work
     segments already covered by the stipulation, e.g., sanding and other work

28       segment times referred to herein. To the extent that there is such additional

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 13**

1   time in the Dr. Mericle Report, it will be removed from Dr. Mericle's
2   multiplier calculation.

(Ct. Rec. 451).

3   The parties characterize Dr. Mericle's original *Alvarez* report differently.
4   The Plaintiffs assert that Dr. Mericle's original *Alvarez* report was never meant to
5   measure the entirety of the unpaid work minutes, since he did not complete a time
6   study for every piece of equipment or work activity.  The Defendants characterize
7   Dr. Mericle's report as a comprehensive schedule of compensable employee pre-
8   and post-shift activities.

9   Dr. Mericle's November 2002 supplemental report presents time
10  calculations for additional activities described above, based on pre-shift
11  shadowing of 27 Pasco employees (DSOF 28-29).  In addition, the report
12  compares the time-span of total uninterrupted pre-shift activities and the
13  summation of distinct activities to conclude that the mere summation of distinct
14  activities underestimates the time spent by employees on pre-shift work
15  preparation (DSOF 29).  Dr. Mericle surmises that this gap is caused by the fact
16  that employees cannot realistically "seamlessly" go from one activity to another
17  (DSOF 29-30).  Accordingly, Dr. Mericle recommends that the court capture this
18  gap between activities by using the ratio created by the comparison of average
19  total time and distinct activities to create a multiplier of 2.2 to elemental times
20  (DSOF 29).

**ii.    Discussion of Dr. Mericle's Study**

21  Defendants argue that this Court should find (1) that Plaintiffs are
22  collaterally estopped from presenting data from Dr. Mericle's new 2002 study
23  because the parties have stipulated that Dr. Mericle's time calculations from his
24  *Alvarez* report will be binding and (2) that Plaintiffs are judicially estopped from
25  taking an inconsistent position than they took in *Alverez* with regard to time
26  estimates (Stipulation ¶ 75).  Plaintiffs maintain that their stipulation is only

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 14**

1    binding as to the time it takes for the employees to perform the distinct activities

2    listed, and does not take into account additional activities that are not listed, and

3    the time between particular activities (Stipulation ¶¶ 83-85).  Plaintiffs also assert

4    that their position in *Alverez* was always that more comprehensive time estimates

5    should be applied based on witness testimony and time card swipe data, so their

6    current position is not inconsistent.

7        Under principles of judicial estoppel, "[w]here a party assumes a certain

8    position in a legal proceeding, and succeeds in maintaining that position, he may

9    not thereafter, simply because his interests have changed, assume a contrary

10   position, especially if it be to the prejudice of the party who has acquiesced in the

11   position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749

12   (2001).  Courts consider three factors when determining whether judicial estoppel

13   should apply: (1) whether positions taken are clearly inconsistent; (2) whether the

14   earlier position taken was accepted by the court; and (3) whether the party seeking

15   to adopt a new position would receive an unfair advantage or impose prejudice

16   upon the opposing party absent estoppel.  *See New Hampshire*, 532 U.S. at 750-

17   51; *see Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir.

18   2001) (applying *New Hampshire* test).

19       The principle of judicial estoppel does not apply to bar the Plaintiffs from

20   presenting Dr. Mericle's new study in *Chavez*, based upon their positions in

21   *Alvarez*.  Plaintiffs argued in *Alvarez* that "Dr. Mericle's figures assume[d] an

22   idealized system in which each core activity is seamlessly melded into another

23   without any delays or inefficiencies [–] a system that is more like the IBP

24   production process" (PSOF 34).  The *Alvarez* Plaintiffs sought recovery based on

25   the broader theories of witness testimony and time card data, over and above Dr.

26   Mericle's core activity estimates.  Therefore, their current position is not

27   inconsistent.  Moreover, the Court did not adopt the position advocated by

28   Plaintiffs; it refused to award the generalized damages the Plaintiffs requested,

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 15**

1  instead opting for a modified time estimate model. Accordingly, this Court was

2  not misled.

3        While IBP argues that it will be prejudiced by the new Dr. Mericle study

4  because it will be unable to adapt its policies to avoid lawsuits, the changes IBP

5  purports to have made are minimal (i.e. the extra 5 minute paid meal break period).

6  Because IBP has done little to orient its practices according to this Court's *Alvarez*

7  rulings, it cannot hold up its purported reliance to demonstrate prejudice.

8        Moreover, the principles of estoppel do not apply to bar the *Alvarez*

9  Plaintiffs from presenting Dr. Mericle's November 2002 report in the face of the

10  Stipulation by the parties. While Paragraph 75 of the Stipulation acknowledges

11  that the estimates for certain equipment donning and doffing from the *Alverez*

12  litigation would apply in the present case, this Stipulation is expressly limited in

13  paragraphs 83 through 85 (Ct. Rec. 451). This Stipulation was signed well after

14  the Defendant's received Dr. Mericle's supplemental report in November 2002, so

15  there is no argument that Defendant was taken unaware or misunderstood the

16  scope of the Stipulation.

17  **E.    Summary Judgment on Double Shifts**

18        Defendants seek summary judgment on Plaintiffs' claim for compensation

19  for rest break time violations and off-the-clock work between double shifts.

20  Defendants assert that such time is not compensable as a matter of law. Plaintiffs

21  assert that employees working double shifts are entitled to a third paid break under

22  Washington law. Moreover, Plaintiffs assert that the unpaid gap between shifts is

23  too short in duration for employees to use the time effectively for their own

24  purposes.

25  **i.    Facts Relevant to Double Shift Gap Pay**

26        Pasco employees sometimes voluntarily work double shifts depending on

27  the time of the year and how busy the facility is (DSOF 33-34). Employees are

28  never forced to work double shifts (DSOF 34). The time between shifts varies

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 16**

1  from one minute upwards (PSOF 42). Employees usually have about 45 to 55

2  minutes between the end of their first shift and the beginning of their second shift

3  when they work double shifts (PSOF 35).[2] Employees are required to clock out at

4  the end of their first shift and clock back in before the start of their second shift,

5  but do not necessarily do so (PSOF 47; DSOF 37).

6      On over 28,400 of the 34,964 double shift workdays, the double shift

7  workers who performed over 12 hours of work did not have a paid third break

8  (PSOF 41). Double shift workers typically have worked almost three hours

9  without a break at the end of shift A, and will work two and one half hours of shift

10  B before they are provided another rest break (PSOF 45).

11      During the time between the two shifts, employees may eat, relax, make

12  phone calls, go to their car, smoke outside, watch television in the processing

13  cafeteria and converse with co-workers (PSOF 36). There is no evidence that any

14  double shift workers leave the plant to go home, shop or run errands. Workers on

15  occasion walk to their car in the parking lot. Any phone calls made from the plant

16  because the calls to Pasco and Walla Walla are long distance calls; therefore

17  workers who wish to call Pasco must do so using a calling card or personal cell

18  phone (DSOF 44). The Pasco plant is located 15 miles from the nearest shopping

19  areas and far from the areas where a significant number of workers reside (DSOF

20  44, 46). The one television available for employees to watch plays only local

21  English-speaking channels, while most employees do not speak English (PSOF

22  44). During the time between shifts, the hallways and locker rooms are crowded

23  and the traffic is heavy in the parking lots (PSOF 44, 46).

24  **ii.   Discussion of Double Shift Gap Pay**

25      Plaintiffs seek damages for double-shift rest break violations and off-the-

26

27      [2]   While Plaintiffs' SOF 42 clarifies that the range of time between shifts
varies from one minute upward, the Court notes that Plaintiffs do not dispute

28  Defendant's claim in PSOF 35 regarding the usual length of the shift break.

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 17**

1  clock work. Defendants assert that sufficient paid rest breaks are provided and

2  employees are able to use gap time between shifts for their own purposes.

3  **a.    Rest Break Claim**

4          Plaintiffs claim that on over 28,000 days, double-shift employees worked

5  over twelve hours without receiving a rest break every four hours, in violation of

6  Washington law (PSOF 41, 45).  Defendants assert that the third rest break

7  required by Washington law need not occur during between-shift time, and each

8  work shift must be analyzed separately for purposes of deciding how many rest

9  breaks workers are entitled.

10         WAC 296-126-092(4) provides that:

11         (4) Employees shall be allowed a rest period of not less than 10 minutes, on
           the employer's time, for each 4 hours of working time. Rest periods shall be
12         scheduled as near as possible to the midpoint of the work period. No
           employee shall be required to work more than three hours without a rest
13         period.

14  Accordingly, under Washington law, employees working twelve hours should

15  receive three paid rest breaks.

16         In *Wingert v. Yellow Freight Systems, Inc.*, 146 Wash. 2d 841 (2002) (en

17  banc), a case cited by neither party, the Washington Supreme Court interpreted

18  WAC 296-126-092(4) to find that Yellow Freight had failed to meet the minimum

19  rest break requirement.  The Court explained that:

20         WAC 296-126-092(4) does not distinguish between regular and overtime
           hours worked. Rather, the chapter defines "hours worked" as "all hours
21         during which the employee is authorized or required by the employer to be
           on duty." WAC 296-126-002(8). Therefore, as the Court of Appeals
22         correctly concluded, the regulation "clearly and unambiguously prohibits
           employees working for longer than three consecutive hours without a rest
23         period" regardless of whether the hours worked are regular hours, overtime
           hours, or a combination of both.

24  *Id.* at 848.  Therefore, the Court concluded that "Yellow Freight did not comply

25  with WAC 296-126-092(4) when it failed to provide paid rest periods to

26  employees who worked two hours or less of overtime following their regular

27  shifts." *Id.* (holding that employees had an implied right of action under

28

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT \* 18**

1 | Washington's industrial welfare statutes).

2 |        Other sections of the same code provision relied on by Plaintiffs suggest

3 | that an employee's "work day" includes hours of overtime worked: WAC 296-

4 | 126-092(3) provides that:

5 |        Employees working *three or more hours longer than a normal work day*
   |        shall be allowed at least one 30-minute meal period prior to or *during the*
6 |        *overtime period.*

7 | (emphasis added).  This language implies that the work day includes all overtime

8 | work performed by the employee, rather than only the work performed by an

9 | employee during one shift.

10 |        The record, when viewed in the light most favorable to the Plaintiffs reveals

11 | that double-shift workers receive one paid morning break, one unpaid meal break,

12 | an unpaid break (or "gap") between shifts and a final paid break.  Therefore, if the

13 | Court were to analyze the double-shifts as one work period, the workers would

14 | receive one paid break less than they are entitled.  Because a genuine cause of

15 | action for lost rest breaks exists, Defendants' motion for summary judgment must

16 | fail.

17 | **b.    Double Shift Gap Period Compensation**

18 |        Plaintiffs also maintain that employees who work double shifts are entitled

19 | to pay for gap periods of less than 120 minutes (2 hours), because employees

20 | cannot use lesser periods effectively for their own purposes.  Defendants argue

21 | that this Court ruled in *Alvarez* that employees may effectively use any amount of

22 | time over twenty minutes for their own purposes, and, therefore any claim that

23 | gaps of greater than twenty minutes are compensable are meritless.  *See Alvarez*

24 | Findings at 26-27.

25 |        29 C.F.R. § 785.16(a) defines "off duty" as

26 |        Periods during which an employee is completely relieved from duty and
   |        which are long enough to enable him to use the time effectively for his own
27 |        purposes are not hours worked. He is not completely relieved from duty and
   |        cannot use the time effectively for his own purposes unless he is definitely
28 |        told in advance that he may leave the job and that he will not have to

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 19**

1   commence work until a definitely specified hour has arrived. Whether the
2   time is long enough to enable him to use the time effectively for his own
    purposes depends upon all of the facts and circumstances of the case.

3   In determining whether time is "off duty," a court must consider whether an

4   employee is "waiting to be engaged" or "engaged to be waiting." *See* 29 C.F.R. §

5   785.1(b); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Time spent waiting for

6   work is compensable if it is "primarily for the benefit of the employer and his

7   business." *Owens v. Local No. 169*, 971 F.2d 347, 350 (9th Cir. 1992).

8          The parties do not dispute that employees are told in advance that they may

9   leave the job and will not have to commence work until a definitely specified hour

10  has arrived; they do dispute whether employees may effectively use the double

11  shift gap time for their own purposes.

12         In determining whether employees are off duty the "critical issue" is

13  "whether the employee can use the time effectively for his or her own purposes."

14  *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411 (5th Cir. 1990) (action against

15  employer, claiming that their rights under FLSA had been violated as result of not

16  being paid for periods of time spent waiting to perform productive work); *see also*

17  *Cole v. Farm Fresh Poultry*, 824 F.2d 923 (11th Cir. 1987). Crucial to this

18  analysis is whether "periods are of a such a short duration" that they are not

19  actually usable. *Id.* Courts undertake a highly fact specific analysis of each

20  unpaid waiting period when determining whether parties are actually off-duty. *See*

21  *Cole*, 824 F.2d at 925 (finding employees need at least one hour in order to use

22  gap time effectively where most employees lived 10 to 20 minutes from the plant,

23  and some workers would go home during extended breaks while other would

24  remain at break room); and *Mireles*, 899 F.2d at 1411 (finding that gaps up to 45

25  minutes should be compensated because the nearest store was 1.5-2 miles away

26  and most workers did not live near the plant).

27         Defendants argue that because employee waiting occurs between shifts,

28  rather than during shifts, the gap time is not compensable as a matter of law. The

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT * 20**

1  difference in waiting on-shift and off-shift is merely a matter of semantics.  The

2  workers in *Mireles*, the court noted, were allowed to leave the employer's

3  premises during their unpaid working time; this fact was irrelevant, however,

4  because the time period provided was unusable.  *Mireles*, 899 F.2d at 1411.

5  Accordingly, the fact that IBP's employees' waiting occurred in the midst of one

6  shift rather than between two distinct shifts is of little legal import.  Employers

7  cannot circumvent paying for waiting time that is not truly "off-duty" by

8  redefining shifts to suit their purposes.

9         Counter to the Defendants suggestion, this Court has not already ruled that

10  employees are able to effectively use periods of 20 minutes or more for their own

11  purposes.  In *Alvarez*, the Court merely found that employees were not completely

12  relieved of duty during their meal break.  As the parties are well-aware, the

13  "relieved of duty" test articulated by the Ninth Circuit is a lesser standard than an

14  off-duty test.  *See e.g. Brennan v. Elmer's Disposal Serv., Inc.*, 510 F.2d 84, 99

15  (9th Cir. 1975).  During a meal break, an employee need only be completely

16  relieved of duty for a thirty minute period "for the purpose of eating regular

17  meals."  *Id.*; 29 C.F.R. § 785.19.  The standard for off-duty time, as defined in 29

18  C.F.R. § 785.16(a), is clearly much higher than that for meal break time.

19         While the parties cite varying case law regarding what amount of time

20  constitutes a sufficient break to constitute off-duty time, case law makes clear that

21  any conclusions drawn by the Court must be entirely based upon the facts

22  presented here.  Because this standard is so fact specific, the Court finds that

23  summary judgment is inappropriate.  The Court finds that Plaintiffs raise facts

24  sufficient to raise a genuine issue of material fact regarding whether workers are

25  able to effectively use time periods of less than 120 minutes for their own

26  purposes.

27  **F.    Summary Judgment on Meeting Pay**

28         Defendants assert that Plaintiffs claims for compensation for meeting time

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 21**

and time between meetings should be dismissed because Defendants already compensate employees for this time. Plaintiffs have abandoned this claim, and therefore a grant of summary judgment is appropriate.

**G.   Summary Judgment on Good Faith Reliance Defense**

Finally, Defendants move for summary judgment on Plaintiff's pre- and post-shift donning and doffing claims from June 6, 2002 until August 5, 2003 based upon their good faith reliance on a Department of Labor opinion letter. Plaintiffs maintain that at most, the DOL opinion letter created conflicting rules, and Defendants cannot be protected by their choice to act in accordance with the rules most favorable to them.

**i.   Facts Related to Good Faith Claim**

On September 14, 2001, this Court issued its *Alvarez* Findings, holding that IBP was in violation of federal and state wage laws for its failure to compensate employees for time spent donning and doffing equipment. On June 6, 2002, the Administrator of the Wage and Hour Division of the United States DOL issued an opinion letter concluding that pre- and post-shift donning and doffing of protective clothing worn by unionized meat processing employees was excluded from compensable time under section 3(o) of the FLSA (DSOF 48; PSOF 49).

Ken Kimbro, Senior Vice President of Human Resources for Tyson Food, believed that this Court's *Alvarez* findings were in error in concluding that workers should be paid for meal break donning and doffing (PSOF 54). Kimbro testified that IBP appealed this issue; however, IBP did not appeal the meal break donning and doffing finding (PSOF 54).

On May 5, 2003, Judge Shea advised the Defendants that the June 2002 opinion letter did not present a "sufficient likelihood" of reversal to warrant a stay. (PSOF 55). On August 5, 2003, the Ninth Circuit affirmed the District Court's ruling on donning and doffing claims (PSOF 56).

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT * 22**

1  ii.      **Discussion of Good Faith Defense Claim**

2          Section 10 of the FLSA provides an affirmative defense to an employer who

3  "pleads and proves that the act or omission complained of was in good faith, in

4  conformity with and in reliance on any written administrative . . . interpretation"

5  by the Department of Labor.  29 U.S.C. § 259(a); 29 C.F.R. § 790.17(h).  To gain

6  the protection of the good faith defense, "an employer must 'show it acted in (1)

7  good faith, (2) conformity with, and (3) reliance on the . . . . Administrator's

8  Opinion Letter." *Alvarez v. IBP*, 339 F.3d 894, 907 (9th Cir. 2003).  Good faith is

9  both "objective and subjective" and requires that the employer have "no

10  knowledge of circumstances which ought to put him upon inquiry."  Thus, section

11  10 does not apply where "an employer ha[s] knowledge of conflicting rules and

12  cho[oses] to act in accordance with the one most favorable to him." *Id.* (quoting

13  29 C.F.R. § 790.15(d) n.99).

14          The Court finds that there is a question of fact as to whether this Court's

15  2001 *Alvarez* findings put IBP on notice of rules that conflicted with the 2002

16  opinion letter.

17  II.     **Plaintiffs' Motion to Strike Portions of the Declaration of Allison D.**

18          **Balus**

19          Plaintiffs move to strike portions of the declaration of Allison D. Balus,

20  counsel for IBP/Tyson, as well as the testimony of an IBP manager and several

21  supervisors.  The Court has not reached this motion because summary judgment is

22  inappropriate regardless of whether this evidence is considered by the Court.

23          **Accordingly, IT IS HEREBY ORDERED**:

24          1.  Defendants' Motion for Partial Summary Judgment (Ct. Rec. 469) is

25  **DENIED IN PART AND GRANTED IN PART**.

26          2.  Plaintiffs' Motion to Strike Portions of Declarations (Ct. Rec. 490) is

27  **DENIED AS MOOT**.

28

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 23**

1       3.  Plaintiff's Motion to Shorten Time for Hearing on Motion to Strike is

2    (Ct. Rec. 492) is **GRANTED**.

3       **IT IS SO ORDERED.**  The District Court Executive is directed to enter

4    this order and to provide copies to counsel.

5             **DATED** this 18 day of August, 2004.

6

7

8             ROBERT H. WHALEY
              United States District Court

9

10   Q:\Civil\2001\Chavez v. IBP\chavez.sj.2.ord.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT * 24**